UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
OUTLOGIC, LLC,

              Plaintiff,

      - against –

ADVAN RESEARCH CORPORATION,
LLC,

              Defendant.

------------------------------X

**MEMORANDUM AND ORDER**

22 Civ. 8038 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    Advan Research Corporation, LLC ("Advan" or "defendant") and

Outlogic, LLC's ("Outlogic" or "plaintiff") predecessor drafted,

signed, and amended a contract to license data.  The contract

contained an initial term of seven years, followed by consecutive

and automatic two-year renewal terms if at least one of Advan's

customers used products or data derived from Outlogic's data.  With

two years still remaining on the initial term, Outlogic brings the

present suit seeking a declaratory judgment that would allow it to

ignore the contracted-for term and terminate the contract now.

    Plaintiff's supposed hook for this relief is a principle of

Virginia law which states that when the duration of a contract is

indefinite, it is terminable at will.  See <u>Stonego Coke & Coal Co.</u>

<u>v. Louisville & N.R., Co.</u>, 106 Va. 223, 226 (1906).  According to

plaintiff, because the contract allows for automatic renewals

without a clear limitation, the contract is indefinite, and plaintiff should be entitled to a declaration from this Court that the contract is terminable at will.

Plaintiff and defendant have each brought motions for summary judgment. For the reasons outlined below, the Court declines to rewrite the contract, as plaintiff requests, and therefore denies its motion for summary judgment in its entirety and grants defendant's cross-motion for summary judgment.

## BACKGROUND

### I.   Factual Background[1]

Plaintiff and defendant each sell data. However, they operate on different levels within the market. Outlogic and its predecessor, X-Mode Social, Inc. ("X-Mode"), "collect[], analyze[], and aggregate[] data related to users of mobile devices . . . which may be used by other businesses for analytics and measurement." Pl. 56.1 ¶ 4. Specifically, Outlogic "aggregates geolocational data." Id. ¶ 6. Advan "is a research company that

---

[1] The following facts are drawn primarily from the parties' Rule 56.1 Statements and responses thereto and documents submitted with each parties' briefings. See Pl. Rule 56.1 Statement ("Pl. 56.1"), ECF No. 26; Def. Counterstatement and Rule 56.1 Statement ("Def. 56.1"), ECF No. 35; Pl. Counterstatement to Def. 56.1 ("Pl. 56.1 Counterstatement"), ECF No. 44. Where the Court relies on facts drawn from any of the 56.1 Statements, it has done so because the evidence in the record supports the statements, no rule of evidence bars admission, and the opposing party has not disputed the facts or has not done so with citations to admissible evidence.

utilizes aggregated data" to sell products to businesses.  Id.
¶ 5.  As such, Advan buys data from companies like Outlogic.

On April 6, 2018, Advan and Outlogic's predecessor, X-Mode,
executed an agreement (the "Data Monetization Agreement" or the
"Contract") through which X-Mode agreed to license some of its
aggregated data to Advan.  Id. ¶ 39.

The Contract contained a "Term and Termination" section
(hereinafter "Term Provision"), which stated:

> This Agreement will commence on the Effective Date and
> will continue for an initial term of seven (7) years
> (the "Initial Term") unless sooner terminated as
> permitted herein.  At the end of the Initial Term, the
> Agreement shall automatically renew for consecutive two-
> year terms (each a "Renewal Term") provided that at least
> one of Licensee's customers use products or data derived
> from the X-Mode Data, subject to the payment provisions
> set forth in Section 3.

Decl. of Jerrod Stroller ("Stroller Decl."), Exhibit A, ECF No.
27-1.

The Contract then specified that it could be terminated by
either party if the other party commits a "material breach of this
Agreement and fails to cure it within thirty (30) days after
written notice by the non-breaching party describing such breach."
Id. at 2.  No other termination events were included in the
contract.

Advan agreed to pay X-Mode a set price for the Initial Term and allowed the parties to "amend this fee (or the manner in which or basis upon which fees are calculated) through an amendment or schedule signed by the parties, at any time." Id. at 2. On April 17, 2020, X-Mode and Advan amended the agreement to change the pricing structure. See Stroller Decl., Exhibit B, ECF No. 27-2.

On May 25, 2021, Outlogic acquired X-Mode, and X-Mode transferred its assets and liabilities, including the Contract, to Outlogic. Pl. 56.1 ¶ 50. Shortly thereafter, Outlogic attempted to amend the Contract now in its possession, and on October 20, 2022, Outlogic and Advan executed a second amendment to the Contract which modified some of the privacy rules. Def. 56.1 ¶ 10.

## II.  Procedural History

On September 21, 2022, a month before the second amendment to the Contract was signed, Outlogic filed its complaint seeking a declaratory judgment that the Contract is indefinite, and as a result, is terminable at will by either party upon reasonable notice. See ECF No. 4. On October 11, 2022, defendant filed a letter pursuant to this Court's Individual Practices seeking leave to file a motion to dismiss the complaint. See ECF No. 13. Plaintiff responded on October 19, 2022, and the Court held a

conference on November 9, 2022.  See ECF No. 17.  During the conference, the parties agreed that the sole issue was one of contract interpretation, and no discovery was needed.  Therefore, the parties agreed to move for summary judgment in lieu of the proposed motions to dismiss.

On December 23, 2022, Outlogic filed its motion for summary judgment, which included a motion to seal, a memorandum of law, a Rule 56.1 Statement, and the declaration of Jerrod Stroller.  See ECF Nos. 20-29.  On January 27, 2023, Advan filed its opposition and cross-motion for summary judgment, which included a motion to seal, a memorandum of law, a counterstatement to plaintiff's Rule 56.1 statement, and the declaration of Yiannis Tsiounis.  See ECF Nos. 34-39.  Outlogic then filed its reply and opposition on March 3, 2023, and Advan filed its reply on March 17, 2023.  See ECF Nos. 43, 45.  After briefing was completed, Outlogic requested permission to file a sur-reply regarding the cross-motion.  See ECF No. 48.  The Court permitted Outlogic to file the surreply, which it then submitted on April 24, 2023.  See ECF Nos. 49-50. The Court held oral argument on June 15, 2023.  See ECF No. 55.

## STANDARD OF REVIEW

Summary judgment is properly granted where "there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56.  "A genuine

issue of material fact exists if 'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'"

Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107,

113-14 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986)).  The movant "always bears the initial

responsibility of informing the district court of the basis for

its motion," as well as the basis for any absence of material fact

in dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Courts must "construe the evidence in the light most favorable to

the non-moving party, and draw all reasonable inferences in its

favor."  Gilman v. Marsh & McLennan Cos., Inc., 826 F.3d 69, 73

(2d Cir. 2016).  If the moving party does not meet its burden,

then there is no issue for trial unless the party opposing summary

judgment presents "sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party."  Anderson,

477 U.S. at 249.

    When the dispute centers around the interpretation of a

contract, summary judgment is warranted "when the language of the

contract is unambiguous" or "when the language [of the contract]

is ambiguous and there is relevant extrinsic evidence, but the

extrinsic evidence creates no genuine issue of material fact and

permits interpretation of the agreements as a matter of law."
Faulkner v. Nat'l Geographic Soc., 452 F. Supp. 2d 369, 375-376
(S.D.N.Y. 2006).  This is because "[t]he proper interpretation of
an unambiguous contract is a question of law for the court, and a
dispute on such issue may properly be resolved by summary
judgment."  Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 64 (2d
Cir. 2002).

## DISCUSSION

As noted earlier, both parties have moved for summary
judgment.  Plaintiff seeks a declaration "that the Term Clauses in
the Agreement are indefinite in duration under Virginia law and,
consequently, the Agreement is terminable at will by either party
upon giving reasonable notice."  Pl. Mem. of Law in Support of
Mot. for Summary Judgment ("Pl. Br.") at 25, ECF No. 28.
Conversely, defendant asks the Court to deny plaintiff's motion
and cross-moves, "seeking an order declaring the parties'
agreement enforceable as written and granting summary judgment in
favor of Advan."  Def. Mem. of Law in Opposition to Pl. Mot. for
Summary Judgment and in Support of Def. Cross-Motion ("Def. Br.")
at 17, ECF No. 38.  In order to resolve both motions, the Court
must only resolve one issue:  whether the duration of the Contract
is indefinite, and therefore whether plaintiff should be

-7-

permitted, as a matter of law, to terminate the contract at will at this time.

This is an entirely legal question appropriate for resolution on summary judgment.  Both parties agree that the Contract is not ambiguous, despite plaintiff's attempts to insert extrinsic evidence into the discussion.[2]  The language of the Contract clearly outlines that the term of the Contract is for a seven-year initial term with automatic two-year renewal terms, provided that Advan's customers continue to use the data.  Thus, the question is

---

[2] Under Virginia law, "where language is unambiguous, it is inappropriate to resort to extrinsic evidence; an unambiguous document should be given its plain meaning."  Great Falls Hardward Co. of Reston v. S. Lake Vill. Ctr. Assocs., 238 Va. 123, 125 (1989).  Moreover, extrinsic evidence cannot be "offered first to create an ambiguity and then to remove it."  Babcock & Wilcox Co. v. Areva NP, Inc., 292 Va. 165, 188 n.18 (2016) (quoting Stewart-Warner Corp. v. Smithey, 163 Va. 476, 487 (1934)).

During the Court's pre-motion conference, in which the parties sought to make a motion to dismiss, the parties agreed that the outcome of the case turned solely on the interpretation of the Term Provision in the Data Monetization Agreement.  In its briefs, plaintiff then attempted to introduce evidence related to statements made during the renegotiation of the agreement but at no point argued that the contract was ambiguous.  Instead, plaintiff claimed to have included this information to provide "a detailed factual overview of the dispute for a variety of reasons, none of which are intended to change the meaning of the Agreement, but rather provide the necessary context for the Court to rule on the pending motions."  Pl. Reply Mem. and Opp. to Def. Cross-Motion ("Pl. Opp.") at 2, ECF No. 43.  Plaintiff additionally sought permission to file a sur-reply to respond to extrinsic evidence that was included in defendant's reply brief — evidence that presumably was only included in response to plaintiff's citation to extrinsic evidence.  See ECF No. 48.  The Court permitted the sur-reply while noting that "the Court's willingness to receive additional briefing material should not be understood as a ruling on whether extrinsic evidence should be considered."  ECF No. 49.  Once again, plaintiff did not argue that the contract was ambiguous.  Given that there is no claim that the contractual term is ambiguous, there is no reason for the Court to consider any evidence outside the words of the contract in deciding this motion, and we do not.

simply whether, under Virginia law, the Contract is indefinite and unenforceable as plaintiff argues or not indefinite and enforceable as defendant maintains.  As explained below, the Initial Term is enforceable, and any determination as to the validity of the Renewal Term is not ripe at this time.

## I.   Virginia Law and Indefinite Contracts

Plaintiff's suit is premised on a single principle of Virginia law.  That is, "[w]hen a contract calls for the rendition of services, if it is so incomplete as that the period of its intended duration cannot be determined by a fair inference from its provisions, either party is ordinarily at liberty to terminate it at will after reasonable notice of his intention to do so." Stonego, 106 Va. at 226.  For example, courts find that contracts are terminable at will when the contract does not specify any duration in the contract.  See id. at 226; Stutzman v. C.A. Nash & Son, 189 Va. 438, 446 (1949); Plaskitt v. Black Diamond Trailer Co., 209 Va. 460, 465 (1968).  Plaintiff argues that because the contract contains a right to automatic renewal terms, it is unclear on the face of the contract when the contract will end.  Thus, plaintiff argues that the duration of the contact is indefinite, and therefore the Court should declare that the contract is terminable at will.

The threshold issue is whether this dispute is even ripe for review at this point.  Plaintiff admits that its challenge to the contract is specifically a challenge to the renewal period.  See Oral Argument Tr. at 3:18-21, ECF No. 55.  Yet plaintiff brings this suit with two years remaining before the renewal period becomes applicable.  To manufacture a ripe dispute, plaintiff engages in an act of logical contortion to argue that, because the renewal provision is allegedly indefinite, the contract is terminable at will before that provision takes effect.  This argument does not withstand even cursory analysis.

First, both parties agree that the contract is still within the initial seven-year term and that there are two years remaining in that term.  Further, both parties admit that the initial term is definite and indicates that the parties intended that the contract last for a minimum of seven years.  See Oral Argument Tr. at 3:8-12.  Thus, for the Court to hold that the contract is currently terminable at will, the Court would have to believe that the addition of the option to renew the contract allows plaintiff to ignore the clear and contracted-for initial term.

Plaintiff cites no case law that would allow it to do so.  In the majority of cases relied upon by plaintiff, courts permitted the parties to terminate the contract at will because the contract

-10-

contained no language as to duration.  See Stonego, 106 Va. at 226; Stutzman, 189 Va. at 446; Plaskitt, 209 Va. at 465.  Here, the opposite is the case.  The explicit language of the contract indicates the parties' clear intent that the contract last for a minimum of seven years.

When asked, plaintiff could not identify a single case in which an indefinite renewal clause allowed a party to ignore a definite initial term.  See Oral Argument Tr. at 7:18-25.  The only case with a similar contractual structure was McLean v. U.S., 316 F. Supp. 827 (E.D. Va. 1970).  In McLean, a court in the Eastern District of Virginia evaluated a one-year lease for a vacant lot that gave the lessee the option to renew the lease from year to year at a set rate and only the lessee had the right to terminate.  Id. at 828.  After three renewal terms had been exercised, the lessors sought a judgment that the lessee had the right to renew for a reasonable time, not in perpetuity.  Id. at 833.  Ultimately, the court in that case ruled on the validity of only the renewal provision.  Id.  The court did not permit the plaintiff to ignore the clear initial term, as that term and three renewal terms had elapsed prior to the suit.[3]

---

[3] Plaintiff also argues that Frank Brunckhorst Co., L.L.C. v. Coastal Atlantic, Inc., 542 F. Supp. 2d 452 (E.D. Va. 2008) and Town of Vinton v. City of Roanoke,

It is fundamental that courts are to respect contracts and avoid rewriting them, especially when they involve sophisticated commercial parties.  "The question is not what would have been a reasonable contract, nor what it may be supposed or conjectured the contracting parties contemplated or anticipated when the contract was entered into; but what did they agree to as evidenced by their contract."  Stonego, 106 Va. at 227.  Without any support, plaintiff asks the Court not only to insert a term into the contract, but also to directly contradict one.  The Court refuses to take plaintiff's invitation to rewrite a negotiated, arms-length contract in a way that is clearly inconsistent with the explicit text of that agreement.  Thus, the Court upholds the definite Initial Term as written, and finds that the contract is not currently terminable at will.

## II.  Indefinite Renewal Terms

The Court does not make any determination as to whether the renewal term is enforceable as written.  Two years remain under the initial term, and it is unclear whether the condition triggering renewal will ever occur.  At this moment, any determination regarding the merits of the renewal provision would

---

195 Va. 881 (1954) support its position.   However, neither case involved a similar contractual structure.

merely serve as an advisory opinion, which this Court is not in the business of providing.  Golden v. Zwickler, 394 U.S. 103, 108 (1969) ("[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions.") (quoting United Pub. Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 89 (1947)).

In a suit for declaratory judgment, there must be an actual case or controversy that is concrete, involves adverse legal interests, and is sufficiently immediate and real.  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).  In other words, "[d]eclaratory relief is appropriate when and only when one or both parties have pursued a course of conduct that will result in imminent and inevitable litigation unless the issue is resolved by declaratory relief."  1 Moore's Federal Practice § 57.22[2][c] (Matthew Bender 3d Ed.).  Accordingly, "a touchstone to guide the probe for sufficient immediacy and reality is whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather whether the feared legal consequence remains a mere possibility, or even probability of some contingency that may or may not come to pass."  Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 406-407 (S.D.N.Y. 2002), aff'd, 346 F. 3d 357

(2d Cir. 2003) (citing Thomas v. Union Carbide Agric. Prod. Co.,
473 U.S. 568, 580-81 (1985)).

As plaintiff emphasized in its brief, the parties operate in
an industry that is changing rapidly. See Pl. Br. at 1-2. It is
unclear whether two years from now Advan's customers will continue
to need Outlogic's data, thus triggering renewal. Moreover, in
two years the parties may choose to amend or modify the agreement.
In other words, litigation over the renewal provision is not
inevitable.[4]

Moreover, as a federal court in New York, this Court is
particularly hesitant to enter into the thicket of analyzing the
enforceability of the renewal provision under Virginia law when it
is unnecessary to do so, and particularly when the law is far from
clear. The cases cited regarding the validity of the renewal
provision do not provide clear guidance and are easily
distinguishable from the facts of this case.[5] As the Court has

_____

[4] During oral argument, plaintiff argued that it was concerned that, by focusing
on the fact that two years remained in the term before the renewal could begin,
"you would never get to a position with a ripe controversy." Oral Argument Tr.
at 14-15. However, plaintiff misses the point. While two years remain in the
initial term, presently it is not clear whether the renewal provision will ever
come into effect. If the renewal provision is invalid, plaintiff can challenge
it during the renewal period.

[5] As discussed previously, almost all of the cases are distinguishable because
the underlying contracts in those cases did not include provisions regarding
duration, and if they did, the structure of the provisions were not at all
similar. See Stonego, 106 Va. at 226; Stutzman, 189 Va. at 446; Plaskitt, 209
Va. at 465; Frank Brunckhorst, 542 F. Supp. 2d at 458 (involving an oral contract
for a distributorship "so long as performance was satisfactory"). Moreover,

-14-

advised the parties, if they are not satisfied with the language of the contract, they always have the business solution of negotiating and amending the contract – a solution already used once by the parties during the pendency of this lawsuit.

**CONCLUSION**

Accordingly, for the reasons stated above, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.  As such, the Clerk of the Court is respectfully directed to terminate the motions pending at ECF Nos. 23 and 34, enter judgment for defendant, and close the case.

**SO ORDERED.**

Dated:   New York, New York
         July 18, 2023

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

the cases in which the court rewrote the contract arose in a significantly different context.  For instance, in Town of Vinton, the case involved the supply of water to a neighboring town.  Town of Vinton, 195 Va. at 885.  It is understandable in that context that the court was concerned about tying up in perpetuity the rights to water that might be needed for the residents of the town, especially when the price in the contract was low.  Similarly, although the court in McLean said it was not considering the increase in value of the property at issue, the court appeared concerned about locking a party into an agreement "with no escalation clause" in which the other side had the unilateral power to renew given the change in circumstances.  McLean, 315 F. Supp. 827 at 834.  Here, the contract involves two sophisticated commercial entities that negotiated at arm's length and even included a provision in the contract that allowed the parties to easily amend the price.  Given the lack of on-point caselaw, the Court declines to opine on the validity of the renewal provision.